UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL ANTHONY WILLIAMS,<br><br>Defendant. | 4:18-CR-40134-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Michael Anthony Williams, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 49. Plaintiff, the United States of America, opposes the motion. Docket 52. For the following reasons, the defendant's motion for compassionate release is denied.

## BACKGROUND

On May 8, 2019, Williams pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 23, 27. On August 8, 2019, the court sentenced Williams to 188 months in custody followed by five years of supervised release. Docket 41 at 1; Docket 43 at 2-3. His sentence was later reduced to 94 months in custody. Docket 48 at 2. His projected release date is October 2, 2025. *See Find an Inmate.,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 6, 2022).

Williams is incarcerated at FCI Forrest City Medium, a medium security federal correctional institution. *See id.; FCI Forrest City Medium*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/fom/ (last visited Jun. 6,

2022). The total population at FCI Forrest City Medium is 1,586 persons. *See FCI Forrest City Medium.*

In support of his motion, Williams argues his medical conditions, the COVID-19 pandemic, his family circumstances, and his participation in BOP programs warrant release from custody under the First Step Act (FSA).[1] Docket 49 at 1-6. Williams submitted an Inmate Request to Staff form to the warden of FCI Forrest City Medium on January 22, 2022, requesting he be placed on home confinement due to extraordinary and compelling reasons. *Id.* at 1; Docket 49-1 at 2. The warden failed to respond within 30 days of receipt. Docket 49 at 1-2. Williams then filed a pro se motion with the court seeking release under the FSA. Docket 49.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the FSA. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate

---

[1] Williams also seeks release on the grounds that he received ineffective assistance of counsel in violation of the 6th Amendment and on the grounds that his sentence now constitutes cruel and unusual punishment in violation of the 8th Amendment, given the health conditions and other hardships he has experienced since the imposition of his sentence. Docket 49 at 4. A Compassionate Release Motion, however, is not the proper vehicle for these claims. Instead, these claims may be appropriate for a petition for habeas relief. Although Williams alludes to his habeas claims being time-barred, the court cannot rule on these claims in a motion for compassionate release.

2

release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2021). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Williams argues that the global COVID-19 pandemic, his health conditions, his family circumstances, and his participation in BOP programs satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 49 at 1-6. He asks for a sentence of time served and a period of home confinement as a condition of supervised release. *Id.* at 7.

I.  **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A).

On January 22, 2022, Williams submitted an Inmate Request to Staff form requesting compassionate release due to his medical conditions, the COVID-19 pandemic, and his family circumstances. Docket 49-1 at 2. On March 7, 2022, Williams filed a pro se motion with the court fourth relief under the FSA. Docket 49. Having presented his request to the warden and not receiving a response within 30 days, and hearing no objection from the United States, the court will presume Williams has satisfied the administrative exhaustion requirement and will review the matter on the merits. *See id* at 2; Docket 52 at 2.

## II.     **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, deterioration of one's physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all

4

category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Williams contends the global COVID-19 pandemic, his health conditions, his family circumstances, and his involvement in BOP programs satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 49 at 1-6. Therefore, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the family circumstances category, USSG § 1B1.13 Note 1(C), and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Williams has failed to show that his reasons for release rise to the level of

"extraordinary and compelling" circumstances justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(i)(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 2, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautins/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning

disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records in this case. Williams' medical conditions include hyperlipidemia, anxiety disorder, sciatica, lower back pain, headaches, and insomnia. Docket 51 at 1. He is not currently prescribed any medication. *See id.* at 15. As of January 13, 2022, Williams weighed 262 pounds and was 75 inches tall. *Id.* at 5. Based on his weight and height, his body mass index (BMI) is 32.7, which falls in the obese category. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited June 6, 2022). He has been counseled on his diet and exercise in the past. *Id.* at 94, 111-112, 143, 145, 192.

Williams also claims he suffers from heart arrhythmia, high blood pressure, bipolar disorder, and panic attacks. Docket 49 at 1. He has not submitted any documents supporting his claims of heart arrhythmia and panic attacks beyond his motion and neither are listed by his medical providers as a

7

condition for which he is currently being treated.

Mood disorders such as bipolar disorder are among the CDC's list of conditions that put a person at increased risk of severe illness from COVID-19. *See People with Certain Medical Conditions.* Williams reported being diagnosed with bipolar disorder in 2013. Docket 36 ¶ 59. During his presentence interview, he reported taking Sertraline and he believed the medication was helping stabilize his mood. *Id.* While in BOP custody, he received prescriptions of OLANZapine and Sertraline and noted in a visit on September 17, 2019, that he does not get angry anymore. Docket 51 at 20, 76, 82-83, 121. These prescriptions were discontinued due to noncompliance on October 15, 2019. *Id.* at 69. Williams' bipolar disorder is listed in his medical records as being in remission. Docket 51 at 1.

Williams cites his high blood pressure as an adverse medical condition that contributes to his extraordinary and compelling reasons justifying an early release. Docket 49 at 1-2. While hypertension is among the CDC's list of conditions that potentially increase the risk of severe illness from COVID-19, Williams had elevated blood pressure *without* a diagnosis of hypertension. *See* Docket 51 at 1. Further, this condition is now in remission. *Id.* He was seen by health services on March 17, 2020, for hypertension and was counseled on his diet and exercise. *Id.* at 143. Similarly, Williams has a current diagnosis of hyperlipidemia. *Id.* at 1. He was prescribed Atorvastatin and counseled on his diet. *Id.* at 71-72, 111, 121. In a health service visit on March 24, 2020, he noted that he stopped taking his Atorvastatin. *Id.* at 190. Neither hyperlipidemia nor elevated blood pressure without a diagnosis of hypertension

are on the CDC list of conditions that put a person at increased risk of severe illness from COVID-19. To the extent that he takes his medication and follows health service's counseling, these conditions are appropriately managed at Forrest City FCC.

Williams also asserts that he is experiencing long-term complications since contracting COVID-19. Docket 49 at 2. On December 5, 2020, Williams tested positive for COVID-19. Docket 51 at 164. While in isolation, records show he experienced no cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, nausea, or vomiting. *Id.* at 154-57, 201-04. The records indicate his asymptomatic COVID-19 case was resolved after completing ten days in isolation. *Id.* at 136-37. Williams, however, claims he never fully recovered and is experiencing "fatigue, migraines, itchy throat, coughing bouts as well as increased chest pain, tightness[,] and multiple heart discomforts[.]" Docket 49 at 2. Screenings conducted in November 2021, nearly one year after Williams had COVID-19, indicate that he had no cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea, or vomiting. Docket 51 at 201-204. There are no medical records demonstrating the existence of these long-term COVID-19 complications. Thus, the court concludes that Williams' prior case of asymptomatic COVID-19 does not warrant release for "extraordinary and compelling reasons."

Of his current medical conditions, Williams' anxiety disorder and obesity are the only conditions identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19. *See People with Certain*

9

*Medical Condition.* Williams declined medication for his anxiety and reported that he has been able to cope with instructions from psychologists. Docket 51 at 177. The court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. *See, e.g., United States v. Wright*, 4:16-CR-40083-04-KES, 2021 WL 391605 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *Adame*, 2020 WL 7212096, at *4-5 (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19). After reviewing Williams' medical records, the court is not convinced that Williams' health conditions prevent him from providing self-care in a correctional facility setting, nor does the court believe his medical conditions amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 6, 2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See id.* Since March 26, 2020, 42,741 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

The court believes Williams' medical conditions are appropriately managed at FCI Forrest City Medium. Although Williams claims the facility is ignoring COVID protocols, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. Docket 49 at 4. This is reflected in the data for FCI Forrest City Medium. There are currently no inmates positive for COVID-19. There were two deaths as a result of COVID-19, and 287 inmates have recovered from COVID-19. *See COVID-19 Coronavirus*. This persuades the court that FCI Forrest City Medium has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See id.* As of June 6, 2022, 319,716 doses have been administered systemwide. *Id.* At Forrest City FCC, 325 staff and 2,845 inmate inoculations were fully completed as of June 6, 2022. *Id.* Williams refused a COVID-19 Moderna vaccine on April 8, 2021. Docket 51 at 211. This leads the court to conclude Williams is not overly concerned about protecting himself against serious illness.

Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of June 6, 2022, the BOP reported only 159 federal inmates have confirmed positive test results for COVID-19 nationwide.

11

*See COVID-19 Coronavirus.* There are currently 139,529 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Williams' medical conditions do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

**B.    Family Circumstances Category, Note 1(C)**

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 1(C), the defendant must demonstrate one of the following: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor . . . children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Williams informs the court that Valentina Abazi, his "registered spouse," is incapacitated and cannot provide self-care. Docket 49 at 4. He claims Abazi has depression and anxiety but provides no medical records to substantiate these claims. *Id.* Instead, he provides contact information for Abazi's psychologist and physicians. Docket 49-1 at 11. Further, he provides no details on how her conditions render her incapacitated. Williams has failed to show the court that Abazi is incapacitated and that Williams is the only caregiver available to his partner.

Williams also claims that Abazi is incapable of rendering parental duties. Docket 49 at 4. Despite no mention of a child in his 2019 PSR, he asserts that his twelve-year-old son has been struggling with behavioral issues due to Abazi's health and Williams' incarceration. *Id.*; *See also* Docket 36 ¶¶ 53-57. But again, he only provides contact information for his son's school, and does

12

not provide any further details or evidentiary support for his son's behavioral issues or that he is the only available caregiver for the minor child. Docket 49-1 at 13. Thus, he has failed to demonstrate family circumstances that constitute extraordinary and compelling reasons for release. Though the court is not unsympathetic, Williams does not qualify for release under the family circumstances category.

## C. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Williams alleges his participation in various programs offered by the Bureau of Prisons merits compassionate release. Docket 49 at 6. He states he has completed or is currently taking more than twelve programs. *Id.* But "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Williams also points out that he is nonviolent with only "one blemish" for possessing a cellphone on his disciplinary record. Docket 49 at 6. Williams' disciplinary record, however, shows that in addition to this infraction, he has been sanctioned for failing to stand count on two different occasions and refusing to obey orders, all occurring in 2020 and 2021. Docket 51 at 217-18. After considering the ongoing COVID-19 pandemic combined with Williams' health conditions, family circumstances, and his participation in BOP programs while incarcerated, the court is not convinced that "extraordinary and compelling reasons" exist to release him early from custody.

13

### III.     Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Williams pleaded guilty to conspiracy to distribute a controlled substance. Docket 23. In May 2016, the Department of Criminal Investigation interviewed a source of information who indicated that Williams was distributing and had in his possession large quantities of methamphetamine in South Dakota. Docket 42 ¶ 7. The PSR outlines numerous instances indicating that Williams was regularly receiving large amounts of methamphetamine through the mail from California. *Id.* ¶¶ 14-18, 22-26. A co-conspirator estimated that during the time Williams lived with her, he sent approximately 30 pounds of methamphetamine through the mail. *Id.* ¶ 23.

Williams also had an individual collect money on his behalf from his drug transactions. *Id.* ¶ 24. The individual estimated he collected $10,000 to $30,000 for Williams' drug operation. *Id.* Additionally, the individual picked up methamphetamine from Williams' supplier on behalf of Williams on two separate occasions. *Id.* ¶ 25. Williams then paid the same individual to receive and distribute various drug packages for Williams' drug operation. *Id.* An additional co-conspirator stated he received 4 to 6 pounds of methamphetamine per week from Williams between March and May 2018. *Id.* ¶ 26. At the conclusion of the investigation, approximately 39.92 kilograms of methamphetamine were attributed to Williams. *Id.* ¶ 27.

The total offense level was calculated as 35 and Williams was in criminal history category II. *Id.* ¶¶ 41, 48. As a result, the guideline range was 188-235

months in custody. *Id.* ¶ 72. The court sentenced Williams at the bottom of his guideline range to 188 months in custody and later reduced the sentence to 94 months in custody. Docket 43 at 2; Docket 48 at 2. After careful consideration, the court concludes Williams' sentence of 94 months continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Williams has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 49) is denied.

Dated June 21, 2022.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE